UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

LOANS ON FINE ART LLC,

                Plaintiffs,

-against-

IAN S. PECK; STUBBS HOLDINGS, LLC,

                Defendants.

Civil Action No. 23-cv-7288

**NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. § 1446**

---

**PLEASE TAKE NOTICE THAT** pursuant to 28 U.S.C. § 1446, Defendants Ian S. Peck and Stubbs Holdings, LLC ("Stubbs") hereby remove this action from the Supreme Court of the State of New York, County of Suffolk (where it bears Index No. 617599/2023) to the United States District Court, Eastern District of New York. The basis for such removal is 28 U.S.C. § 1332(a)(1) as (i) the amount in controversy exceeds $75,000.00; and (ii) there is diversity of citizenship between Plaintiff Loans on Fine Art LLC ("LOFA"), a citizen of the State of Colorado, and Defendants Peck and Stubbs, each a citizen of the State of New York.

        Annexed hereto is a copy of the Summons and Amended Verified Complaint.

        Pursuant to Local Civil Rule 81.1, Defendants Peck and Stubbs further state as follows:

        1.     Plaintiff LOFA is a limited liability company organized under the laws of the State of Colorado, the sole member of which is Gary Greenberg, a citizen of the State of Colorado.

        2.     Defendant Peck is a citizen of the State of New York.

3. Defendant Stubbs is a limited liability company organized under the laws of the State of New York, with a registered address at c/o Art Capital Group LLC, 1115 Broadway, 11th Floor, New York, New York 10002. The members of Stubbs are (1) Beta Leo Investments, LLC, a limited liability company organized under the laws of the State of Delaware, the sole member of which is Gregory Selch, a citizen of the State of New York; and (2) Ian Peck, a citizen of the State of New York.

4. Plaintiff has not yet served Peck with the Amended Verified Complaint. Stubbs received the Amended Verified Complaint in a mailing from the New York Secretary of State on or about August 31, 2023.

Dated:   September 29, 2023
         New York, New York

> PRESS KORAL LLP
> 7 World Trade Center, 46th Floor
> New York, New York 10007
> Telephone (212) 922-1111
> mpress@presskoral.com
>
> By: _____
>         Matthew J. Press
>
> *Counsel to Defendants*

**NOTICE TO:**

M. Zachary Bluestone
Bluestone P.C.
52 Duane Street, 7th Floor
New York, NY 10007
(202) 655-2250
mzb@bluestonelaw.com

*Counsel to Plaintiff*

-3-

## CERTIFICATE OF SERVICE

      I hereby certify that on September 29, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                 /s/
                                    Matthew J. Press

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
-----------------------------------------------------------------------X
LOANS ON FINE ART LLC,

                Plaintiff,

      -against-

IAN S. PECK; STUBBS HOLDINGS, LLC,

                Defendants.
-----------------------------------------------------------------------X

Index No. 617599/2023

**SUMMONS**

**TO THE ABOVE-NAMED DEFENDANTS**:

      **YOU ARE HEREBY SUMMONED** to appear by serving an answer to the annexed Amended Verified Complaint upon Plaintiff's attorney at the address stated below, within twenty (20) days after the service of this Summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Amended Verified Complaint, together with the costs of this action.

DATED:  July 19, 2023

                                            Respectfully submitted,

                                            BLUESTONE, P.C.
                                            *Attorneys for Plaintiff Loans on Fine Art LLC*

                                          By: /s/ *M. Zachary Bluestone*
                                                M. Zachary Bluestone
                                                52 Duane Street, 7th Floor
                                                New York, NY 10007
                                                Tel: (646) 970-7712
                                                mzb@bluestonelaw.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
------------------------------------------------------------------X
LOANS ON FINE ART LLC,

        Plaintiff,

-against-

IAN S. PECK; STUBBS HOLDINGS, LLC,

        Defendants.
------------------------------------------------------------------X

Index No. 617599/2023

**AMENDED VERIFIED COMPLAINT**

Plaintiff Loans on Fine Art LLC ("Plaintiff"), through its undersigned counsel, for its Amended Complaint against Ian S. Peck ("Peck") and Stubbs Holdings, LLC ("Stubbs" and collectively, "Defendants"), alleges and states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff is a limited liability company organized under Colorado law. Its sole member is a citizen of Colorado.

2. Peck is an individual residing at 161 Lumber Lane, Bridgehampton, New York 11963.

3. Stubbs is a New York limited liability company with its registered address at c/o Art Capital Group, Inc., 1115 Broadway, New York, NY 10002. Stubbs is wholly owned and controlled by Peck.

4. Stubbs is listed as the owner of a certain real property located at 161 Lumber Lane, Bridgehampton, New York 11963 (the "Property").

5. This Court has personal jurisdiction over Defendants under CPLR § 301, because they are domiciled and regularly conduct business in New York.

1

6. Venue is proper in this Court pursuant to CPLR § 507, because this action and the requested relief and judgment affects the possession, use, and enjoyment of the Property that is located in Suffolk County.

**FACTUAL BACKGROUND**

7. Peck is the Bernie Madoff of the art-finance world. He has been involved in art-related financing for decades. His business largely consists of providing financing secured by fine art.

8. Peck is a serial litigant with an extensive history of filing frivolous lawsuits against business partners, investors, and his own family members. He has been involved in over 25 recent, separate litigations, including two against his stepmother. Courts have taken extraordinary steps to curb Peck's abusive litigation tactics, including holding Peck in contempt, striking Peck's filings, and ordering the pre-judgment attachment of assets of Peck and his entities after Peck was caught siphoning off funds.

9. In part, Peck has been able to commit fraud for many years thanks to an incredible number of entities that he has incorporated, all of which operate out of the same principal place of business, and all of which Peck uses to ostensibly conduct art financing, including, for example:

    a. Art Capital Bermuda, Ltd. (incorporated in Bermuda with an office at 1115, Broadway, New York, New York 10010);

    b. Bluefin Servicing, Ltd. (incorporated in Bermuda with an office at 1115, Broadway, New York, New York 10010);

    c. Bluefin Capital Partners, LLC (incorporated in Delaware with its principal place of business at 1115, Broadway, New York, New York 10010);

d. Patriot Credit Company, LLC (incorporated in Delaware with its principal place of business at 1115, Broadway, New York, New York 10010);

e. Janus Management, LLC (incorporated in Delaware with its principal place of business at 1115, Broadway, New York, New York 10010);

f. Janus Re Corp (incorporated in North Carolina with its principal place of business at 1115, Broadway, New York, New York 10010);

g. ACG Credit Company, LLC (incorporated in Delaware with its principal place of business at 1115, Broadway, New York, New York 10010);

h. ACG Credit Company II, LLC (incorporated in Delaware with its principal place of business at 1115, Broadway, New York, New York 10010);

i. ACG Finance Company, LLC (incorporated in Delaware with its principal place of business at 1115, Broadway, New York, New York 10010);

j. Fine Art Finance, LLC (incorporated in Delaware with its principal place of business at 1115, Broadway, New York, New York 10010);

k. Art Capital Group, LLC (incorporated in Delaware with its principal place of business at 1115, Broadway, New York, New York 10010);

l. Art Capital Group, Inc. (incorporated in Delaware with its principal place of business at 1115, Broadway, New York, New York 10010);

m. Pegasus Credit Company, LLC (incorporated in Delaware with its principal place of business at 1115, Broadway, New York, New York 10010);

n. ACG Arrangement Services, LLC (incorporated in Delaware with its principal place of business at 1115, Broadway, New York, New York 10010);

o. ACG Capital Company, LLC (incorporated in Delaware with its principal place of business at 1115, Broadway, New York, New York 10010); and

p. Modern Art Services, LLC (incorporated in Delaware with its principal place of business at 1115, Broadway, New York, New York 10010).

10. Just in the last eight years, Peck and his army of affiliate and alter ego entities have been involved in litigation with creditors that resulted in at least <u>nine</u> adverse money judgments exceeding $17 million, as follows:

| Date | Case Style | Amount |
|---|---|---|
| December 23, 2015 | *MIP 145 East 57th Street, LLC v. Ian Peck, et al.* (Index # 156209/2012) | $834,871.95 |
| March 2, 2020 | *ABL Advisor, LLC, et al. v. Bluefin Capital Partners, LLC, et al.* (Index # 651985/2015) | $1,774,608.29 |
| August 20, 2020 | *Rower, LLC v. Ian Peck* | $31,143.29. |
| September 15, 2020 | *The Board of Managers of the 5 East 17th Street Condominium v. Ian Peck* (Index # 151186/2019) | $118,694.63 |
| January 19, 2021 | *Lantern Endowment Partners, LP v. Modern Art Services and Ian Peck, et al.* | $465,600.37 |
| May 24, 2021 | *Walnick, LLC, et al. v. ACG Capital Company, LLC and Pegasus Credit Company, LLC* (Index # 656098/2020) | $2,649,097.43 |
| September 2, 2021 | *Jonathan S. Berck, LLC v. Art Capital Group, LLC, et al.* | $96,847.86 |
| December 6, 2021 | *CIT Bank, N.A. v. ACG Capital Company, LLC* (Index #160908/2021) | $878,827.94 |
| December 16, 2021 | *Art Capital Bermuda, et al v. the Bank of N.T. Butterfield & Son Limited*, (Index # 650082/2017) | $10,255,134.93 |

4

### *The Underlying Award*

11. During the second half of 2013, entities wholly owned and controlled by Peck began entering into business transactions with Plaintiff and other entities with common ownership and control as Plaintiff.

12. In January 2021, Peck, individually, entered into a settlement agreement obligating himself to make payment to Plaintiff, along with co-obligors ACG Arrangement Services LLC; Art Capital Bermuda, LTD.; AGC Capital Company, LLC; Modern Art Services, LLC; Patriot Credit Company LLC; and Pegasus Credit Company LLC, all of which are entities that Peck owns and controls.

13. Subsequently, Peck breached that settlement agreement.

14. On April 5, 2023, Plaintiff (and other related entities) obtained a $7,198,960.30 JAMS arbitration award against Peck; ACG Arrangement Services, LLC; ACG Capital Company, LLC; Modern Art Services, LLC; Patriot Credit Company, LLC; and Pegasus Credit Company, LLC (the "Award").

15. Peck was represented by counsel throughout the arbitration and the Award is fully reasoned.

16. On May 18, 2023, Plaintiff filed its petition to confirm the Award under the Federal Arbitration Act in the Southern District of New York. *See Loans on Fine Art LLC v. Ian S. Peck, et al.*, 23-cv-4143 (S.D.N.Y.) ("Confirmation Action").

17. While Peck has opposed Plaintiff's petition to confirm the Award and moved to vacate the Award in the Confirmation Action, in addition to filing an independent action to vacate the Award, Plaintiff anticipates that the Award will be confirmed shortly. *See Loans on Fine Art LLC v. Ian S. Peck, et al.*, 23-cv-05717 (S.D.N.Y.).

### *Defendant Stubbs Holdings, LLC*

18. Stubbs is another one of Peck's alter egos, which he has used for nearly twenty years in furtherance of his multiple frauds, including the scheme that was perpetrated on Plaintiff, and which Peck is now using to evade his creditors, such as Plaintiff.

19. Between 1999 and 2003, Peck conducted his art-financing business through Art Capital Group, Inc. ("ACG"), where he was the President. ACG is a Delaware limited liability company that was registered to do business in New York in March 1999.

20. During this time, ACG was unsuccessful, investors lost their investments, and in 2003, ACG became insolvent and ceased operations.

21. Peck failed to meet his fiduciary duties to the investors in ACG.

22. Around the same time, Peck began conducting certain art financing business through a new entity, Art Capital, LLC, which continues to operate.

23. In late 2004, Peck formed Stubbs Holdings, LLC for the purpose of managing Peck's personal finances. Peck testified under oath:

> ". . . Stubbs is a holding company that I own a hundred percent of. <u>It only handles my personal affairs</u>, and it has a bank account. And routinely, I would use that account to fund the company [ ] to make loans, using, you know, capital that I was putting in or to fund expenses."

See Trial Transcript, *Hilton Head Holdings b.v. v. Ian Peck, et al.*, 11-cv-07768 (S.D.N.Y. Sept. 14, 2012), D.E. 100 at 121:9-14 (emphasis added).

24. In or about August 2005, Peck obtained title to the Property through a deed made by Richard Demato and Harriet Demato to Ian Peck c/o Art Capital Group dated August 15, 2005, and recorded on August 31, 2005, in exchange for a sale price of $3,778,500.

25. Peck then immediately attempted to transfer legal title to the Property to Stubbs through a deed made by Ian Peck c/o Art Capital Group to "Stubbs Holding Llc, c/o Art Capital

Group," dated September 19, 2005, and recorded on October 20, 2005, in exchange for no consideration. Neither Peck nor Stubbs paid any transfer taxes in connection with the aforementioned "Non-Arms-Length Transfer."

26. There is no registered entity with the name "Stubbs Holding Llc."

27. Peck attempted to transfer the Property in order to avoid paying his then-current creditors, including but not limited to, creditors arising from Peck's role with Art Capital Group, and future creditors, including Plaintiff.

28. At all times relevant, Peck retained control of the Property.

29. Between April 10, 2013, and June 6, 2013, Peck executed a new deed "…to correct the erroneous description and the name of the grantee" and proceeded to transfer legal title to the Property to Stubbs, through a deed made by Ian Peck, c/o Art Capital Group to "Stubbs Holdings, LLC a/k/a Stubbs Holdings LLC c/o Art Capital Group," dated April 10, 2013 and recorded on June 6, 2013 in exchange for no consideration and in connection with neither Peck nor Stubbs paying any transfer taxes.

30. Peck's 2013 transfer of the Property was made to avoid paying his then-current creditors, including but not limited to Hahn & Hessen LLP, and future creditors, including Plaintiff.

31. On or about June 4, 2013, Stubbs took out a mortgage on the Property.

32. On or about February 12, 2015, Stubbs borrowed $2,021,000.00 from Peck's late father, Norman Peck to pay Peck's individual obligations, as well as those of other of Peck's wholly owned and controlled entities, and it entered into a secured promissory note under which, among other things, Stubbs agreed to pay Norman Peck, $2,021,000.00, along with 3% interest,

on or before a maturity date of July 1, 2015 (the "Secured Promissory Note"). The note was secured by a second mortgage against the Property (the "Second Mortgage").

33. Peck, individually, guaranteed the Secured Promissory Note.

34. At the time Stubbs granted the Second Mortgage, it was the alter-ego of Peck.

35. Stubbs granted the Second Mortgage with the intent to hinder, delay, and defraud Peck's then and future creditors, and with no intent to repay Norman Peck.

36. Norman Peck received the Second Mortgage with no intention of receiving payment from Peck.

37. At no time has Stubbs made any payments against the Secured Promissory Note.

38. According to Peck, Norman Peck agreed that Peck did not need to repay the Secured Promissory Note.

39. As of the filing of this Amended Complaint, the Second Mortgage remains on the Property.

***Art Capital, LLC***

40. In August 2021, Peck testified under oath that as the Director of Art Capital, LLC, he receives approximately $250,000 annually.

41. However, at the same time, Peck also testified that as of about August 2020, he did not maintain bank account in his own name.[1]

42. Monies owed to Peck, individually, from Art Capital, LLC, as well as from other limited liability companies that Peck wholly owns and controls, are indirectly used to pay the

---

[1] This is consistent with Peck directing nearly $150,000 of annual rental income from his New York City condominium in 2022—which he solely owns in his individual capacity—to his wife, Allison Jurgens.

upkeep, monthly mortgage payments, and regular maintenance on the Property (the "Property Payments"), including:

    a. Monthly mortgage payments to the Wheatly Harbor LLC and the Gross Family Holdings, LLC of $17,000 per month between June 5, 2017 and July 11, 2019, totaling $425,000;

    b. A $50,000 payment to the Wheatly Harbor LLC and the Gross Family Holdings, LLC on or about June 9, 2022 against monies owed by Stubbs and secured by the Property;

43. The Property Payments are made for the benefit of Stubbs and Peck and are made by Peck with the intent to defraud, hinder, and delay, Peck's creditors, including Plaintiff.

44. Plaintiff first learned about the Property transfers, the Second Mortgage and the Property Payments after obtaining its Award in 2023.

45. In response to an information subpoena in another action, Peck swore under penalty of perjury that he did "not currently maintain a savings account. I personally maintained [a] checking account at Bank of America which closed on or about August 2020."

46. This is because Peck uses Stubbs's bank account to fund his personal expenses.

47. Even though Stubbs's sole asset is located in Bridgehampton, its principal place of business is the same as that of the rest of Peck's alter egos: "c/o Art Capital Group LLC, 1115 Broadway, 11th Floor, New York, New York 10002.

48. Stubbs has no business and was never properly capitalized.

49. Stubbs's only purpose is to serve as a holding company for the Property, to pay personal expenses, and to handle his "personal affairs."

9

50. Thus, at all relevant times, Stubbs has held legal title to personal and real property for the benefit, use, enjoyment, and at the direction of Peck.

51. At all relevant times, Peck has exercised complete dominion and control over the activities and assets held by Stubbs for Peck's own and personal benefit.

52. Stubbs is a mere alter ego and instrumentality of Peck, which he formed for the sole purpose of avoiding his ever-growing list of creditors.

53. Plaintiff has been damaged by the fraudulent transfers as identified herein by not receiving payment from Peck for the Award, no portion of which has been satisfied.

## COUNT I – DECLARATORY RELIEF

54. Plaintiff repeats and realleges paragraphs 1 through 53 as if fully set forth herein.

55. Peck has exercised complete dominion of Stubbs as a mere device to further his personal rather than legitimate corporate business interests.

56. As described above, such domination was used to commit fraud or wrong against Plaintiff, which resulted in injury to Plaintiff.

57. The Court, therefore, should disregard Stubbs's corporate form to prevent further fraud and to achieve equity.

58. In that regard, Plaintiff seeks a declaration that Stubbs Holdings, LLC is an alter ego of Ian S. Peck, is dominated and controlled by Ian S. Peck, and holds legal title to assets for the benefit, use, and enjoyment of Ian S. Peck.

## COUNT II – FRAUDULENT CONVEYANCE
### (Actual Fraud – Property Transfers, Former DCL § 276)

59. Plaintiff repeats and realleges paragraphs 1 through 58 as if fully set forth herein.

60. DCL § 276 provides that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

61. Peck's transfers of the Property in 2005 and 2013, as described above, were made with the actual intent to hinder, delay, or defraud present and future creditors, including Plaintiff, in violation of DCL § 276.

62. Peck acted with actual intent to hinder, delay, or defraud his present and future creditors because, among other things:

   a. The transfers were made to an insider;

   b. Peck retained possession and control of the Property at all times;

   c. Before the transfers were made, Peck was the defendant in litigation and had been threatened with additional litigation;

   d. The transfers were made shortly before or shortly after a substantial debt was incurred; and

   e. Peck did not receive any consideration, or consideration of a reasonably equivalent value, in exchange for legal title to the Property.

63. Plaintiff has been damaged as a result of this fraudulent conveyance.

64. Accordingly, the aforementioned transfers are fraudulent as to Plaintiff and Plaintiff is entitled to judgment (a) disregarding the conveyances and allowing Plaintiff to attach or levy execution upon the Property conveyed, or (b) awarding the value of the Property to Plaintiff, with interest and/or appreciation, to the maximum extent provided by law, and (c) an award of reasonable attorneys' fees.

### COUNT III – FRAUDULENT CONVEYANCE
### (Actual Fraud - Second Mortgage, Former DCL § 276)

65. Plaintiff repeats and realleges paragraphs 1 through 58 as if fully set forth herein.

66. DCL § 276 provides that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

67. Peck, acting through his alter-ego, Stubbs, encumbered the Property and granted the Second Mortgage to Norman Peck with the actual intent to hinder, delay, or defraud present and future creditors, including Plaintiff, in violation of DCL § 276.

68. Peck and Stubbs acted with actual intent to hinder, delay, or defraud his present and future creditors because, among other things:

   a. the Second Mortgage was granted to an insider (Peck's father);

   b. Peck and Stubbs had no intention of repaying the Second Mortgage and, in fact, have not made mortgage payments in the more than 10 years since it was granted;

   c. Despite never making mortgage payments, Peck retained possession and control of the Property at all times;

   d. The Second Mortgage was granted at a time when Peck was the defendant in litigation and had been threatened with additional litigation; and

   e. The Second Mortgage was granted shortly before or shortly after a substantial debt was incurred.

69. Plaintiff has been damaged as a result of this fraudulent encumbrance.

70. Accordingly, the aforementioned encumbrance is fraudulent as to Plaintiff and Plaintiff is entitled to judgment (a) voiding the encumbrance and allowing Plaintiff to attach or

levy execution upon the Property, or (b) awarding the value of the Property to Plaintiff, with interest and/or appreciation, to the maximum extent provided by law, and (c) an award of reasonable attorneys' fees.

## COUNT IV – FRAUDULENT CONVEYANCE
### (Actual Fraud - Property Payments, Former DCL § 276)

71. Plaintiff repeats and realleges paragraphs 1 through 58 as if fully set forth herein.

72. Prior to April 4, 2020, Peck directed monies owed to him by Art Capital, LLC, among other payments Peck was entitled to receive from limited liability companies that he wholly owns and controls, to pay obligations of Stubbs and the Property with the actual intent to hinder, delay, and defraud his present and future creditors.

73. The Property Payments were made with the actual intent to hinder, delay, or defraud present and future creditors, including Plaintiff, in violation of DCL § 276.

74. Peck acted with actual intent to hinder, delay, or defraud his present and future creditors because, among other things:

   a. Peck was entitled to the Property Payments and derived a direct benefit from them because he retained control and possession of the Property at all times;

   b. The Property Payments were made at a time when Peck was the defendant in litigation and had been threatened with additional litigation;

   c. The Property Payments were made shortly before or shortly after Peck incurred a substantial debt; and, therefore,

   d. Peck used corporate entities to move the Property Payments and hide the proceeds from present and future creditors;

75. Plaintiff has been damaged as a result of this fraudulent conveyance.

13

## COUNT V – FRAUDULENT CONVEYANCE
### (Actual Fraud - Property Payments, Current DCL § 273[2])

76. Plaintiff repeats and realleges paragraphs 1 through 58 as if fully set forth herein.

77. On or subsequent to April 4, 2020, Peck directed monies owed to him by Art Capital, LLC, among other payments Peck was entitled to from limited liability companies that he wholly owns and controls, to pay obligations of Stubbs and the Property with the actual intent to hinder, delay, and defraud his present and future creditors.

78. The Property Payments were made with the actual intent to hinder, delay, or defraud present and future creditors, including Plaintiff, in violation of DCL § 273.

79. Peck acted with actual intent to hinder, delay, or defraud his present and future creditors because, among other things:

    a. Peck was entitled to the Property Payments and derived a direct benefit from them because he retained control and possession of the Property at all times;

    b. The Property Payments were made at a time when Peck was the defendant in litigation and had been threatened with additional litigation;

    c. The Property Payments were made shortly before or shortly after Peck incurred a substantial debt; and, therefore,

    d. Peck used corporate entities to move the Property Payments and hide the proceeds from present and future creditors;

80. Plaintiff has been damaged as a result of this fraudulent conveyance.

---

[2] On April 4, 2020, New York's Uniform Voidable Transactions Act became effective, replacing the former Uniform Fraudulent Conveyances Act.

14

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants on each cause of action, as follows:

A. Declaring that Stubbs is an alter ego of Peck;

B. Holding Stubbs severally and jointly liable for the Award;

C. Enjoining Peck, Stubbs, or anyone acting in concert with Defendants, from transferring the Property until the Award is satisfied in full;

D. If already transferred, granting Plaintiff the right to levy upon the assets transferred or their proceeds;

E. Setting aside and annulling the fraudulent conveyances, disregarding the conveyances and attaching or levying execution upon the conveyed property, and/or awarding damages against Defendants in the value of the fraudulently conveyed property;

F. Reasonable attorney's fees, expenses, costs and disbursements in this action; and

G. Awarding or directing such other and further relief as the Court deems just and proper.

DATED: July 19, 2023

Respectfully submitted,

BLUESTONE, P.C.
*Attorneys for Plaintiff Loans on Fine Art LLC*

By: /s/ *M. Zachary Bluestone*
M. Zachary Bluestone
52 Duane Street, 7th Floor
New York, NY 10007
(202) 655-2250
mzb@bluestonelaw.com

## VERIFICATION

Loans On Fine Art LLC, being duly sworn, deposes and says: I am the plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters, I believe them to be true.

LOANS ON FINE ART LLC

BY: _____
Gary Greenberg,
Managing Member

**Plaintiff**

Sworn to before me this

____19th____ day of ____July____, 2023

Notary Public _____

MARIA ISABEL VERDUZCO VEJAR
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20204041584
MY COMMISSION EXPIRES 11/27/2024